FILED
2020 Mar-16 AM 09:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| KIMBERLEY RICH JOINER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case Number: 2:19-cv-00298-JHE |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION

Plaintiff Kimberly Rich Joiner ("Joiner") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her application for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). (Doc. 1). Joiner timely pursued and exhausted her administrative remedies. This case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **REVERSED AND REMANDED**.

## I. Factual and Procedural History

Joiner filed her applications for a period of disability, DIB, and SSI on August 17, 2015, alleging she became unable to work beginning July 1, 2007. (Tr. 197-210). The Agency initially denied these claims on October 23, 2015. (Tr. 89-98). Thereafter, Joiner filed a written request for a hearing (tr. 101-04), and on August 16, 2017, Joiner appeared and testified at a hearing (tr. 26-40). After the hearing, the Administrative Law Judge ("ALJ") ordered a consultative examination. (Tr. 39). Joiner appeared at a second, supplemental hearing on February 22, 2018.

(Tr. 41-68). On April 27, 2018, the ALJ issued an unfavorable decision and denied Joiner's claims. (Tr. 19). Joiner sought review by the Appeals Council, but it declined her request on December 21, 2018. (Tr. 1-6). On that date, the ALJ's decision became the final decision of the Commissioner. On February 19, 2019, Joiner initiated this action. (*See* doc. 1).

Joiner was twenty-nine years old on July 1, 2007, her alleged onset date, and thirty-eight years old on August 17, 2015, her application date. (Tr. 262). Joiner has a high school education. (Tr. 254).

## II. Standard of Review[1]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence. "Substantial evidence may even exist contrary to the findings of the ALJ, and [the reviewing court] may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned." *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991). However,

---

[1]In general, the legal standards applied are the same whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

the Court reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[2] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4) whether the claimant can perform his or her past work; and
(5) whether the claimant is capable of performing any work in the national

---

[2]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

3

economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Joiner meets the insured status requirements of the Social Security Act through December 31, 2009, and that Joiner had not engaged in substantial gainful activity since July 1, 2007, the alleged onset date. (Tr. 12). At Step Two, the ALJ found Joiner has the following severe impairments: depression and anxiety. (Tr. 13). At Step Three, the ALJ found Joiner did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13).

Before proceeding to Step Four, the ALJ determined Joiner's residual functioning capacity ("RFC"), which is the most a claimant can do despite her impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined that Joiner had the RFC to perform a full range of work at all exertional levels but with the following non-exertional limitations: Joiner is limited to simple, routine job tasks which do not require her to have contact with the general public and no more than

occasional contact with coworkers. Joiner is precluded from jobs requiring her to be responsible for the safety and welfare of others, and is limited to jobs which deal primarily with objects and no people. She is precluded from work around unprotected heights and should avoid dangerous machinery. (Tr. 15-17).

At Step Four, the ALJ determined Joiner is unable to perform any past relevant work. (Tr. 17). At Step Five, the ALJ determined, based on Joiner's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy Joiner could perform. (Tr. 18-19). Therefore, the ALJ determined Joiner has not been under a disability and denied her claim. (Tr. 19).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Joiner challenges the Commissioner's decision on two broad grounds, contending: (1) the ALJ improperly discredited Joiner's subjective testimony with respect to her exertional and non-exertional limitations, and (2) the ALJ failed to pose a hypothetical question to the vocational expert that comprised all of Joiner's limitations, thereby misstating her RFC. (Doc. 10 at 17-26). While the undersigned finds there is substantial evidence to support many of the ALJ's findings, there is one glaring error that requires remand: the ALJ erred when he failed to consider Joiner's

physical limitations and complaints of physical pain and treatment notes/opinion evidence from Dr. David Gordon.

**A. Joiner's History of Right Leg Problems and Dr. Gordon's Medical Records**

Before proceeding to Step Four, the ALJ determined Joiner's residual functioning capacity ("RFC"), which is the most a claimant can do despite her impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined that Joiner had the RFC to perform a full range of work at all exertional levels but with certain non-exertional limitations. (Tr. 16-17). When making this RFC determination, the ALJ failed to properly consider both (1) Joiner's subjective complaints of pain/difficulty standing and lifting; and (2) Dr. Gordon's treatment notes and opinions therein. On remand, the ALJ should reevaluate Joiner's exertional limitations.

When a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms, courts within the Eleventh Circuit apply a three-part pain standard. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such severity that it could reasonably be expected to give rise to the alleged pain. *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

The ALJ must express a reasonable basis for the rejection of the claimant's testimony with regard to her allegations of pain (or other subjective complaints). *Sewell v. Bowen*, 792 F.2d 1067, 1068 (11th Cir. 1986). The consideration of the claimant's subjective complaints of pain only to the extent that there is objective clinical or laboratory evidence supporting such claims is reversible error. *Wiggins v. Schwiecher*, 679 F.2d 1387 (1982). The ALJ must articulate explicit and adequate reasons for discrediting testimony regarding subjective complaints. *Hale v. Brown*, 831 F.2d 1007,

1011 (11th Cir. 1987).

Here, the ALJ found Joiner's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 16-17). Joiner testified that she can only stand for 10 to 15 minutes and that she has trouble lifting laundry. (Tr. 16). The ALJ clearly discredited this testimony when he found she could perform a full range of work at all exertion levels, with a few non-exertional limitations.

Notably, the ALJ does not directly address Joiner's testimony regarding her prior leg fracture and surgeries. (Tr. 16-17). Joiner testified that she was in an automobile accident in 1998, and medical records indicate she has had multiple surgeries on the same leg, including the insertion of an intramedullary nail. (Tr. 51, 802-05). At the hearing, Joiner testified she takes Norco for pain related to this issue and that it affects her mobility to the extent her body overcompensates with her left knee and it makes standing difficult. (Tr. 51-52). The record also includes treatment notes from Dr. David Gordon, who has treated Joiner for several years following the surgeries. (Tr. 788-975). Although some of Dr. Gordon's handwritten notes are difficult to read, the undersigned can tell that the notes repeatedly cite that Joiner experiences pain and he continues to prescribe Norco. (*See id.*). As counsel for Joiner points out (doc. 10 at 20 & doc. 14 at 3-4), Dr. Gordon's notes also prescribe functional limitations including decreased strength and a reduced range of motion. (*See e.g.*, tr. 811, 814, 825, 831 836, 842, 847, 851, 855, 860, 864). It appears many of the handwritten notes have a downward pointing arrow next to the word "strength" and "ROM" for range of motion. (Tr. 826-929). There are several other instances in the record that show Joiner suffers from chronic pain. For example, it is noted in her hospital discharge papers

7

(tr. 422), and also noted by Dr. David R. Faber (Tr. 451-52).

The ALJ erred when he discredited Joiner's complaints of pain and physical limitations without taking into account Dr. Gordon's records. Although Joiner may have not emphasized her physical limitations as much as her mental limitations, she nevertheless alleged physical limitations. (Tr. 51, 256). Likewise, the record contains almost 200 pages of records from Dr. Gordon, which the ALJ appears to have ignored. This error is magnified by the fact that the ALJ notes "there is little evidence between the alleged onset date and the date last insured." (Tr. 17). In its brief, the Commissioner asserts that "[t]he only medical records relating to her physical condition that [Joiner's] brief discusses were from a period that was not relevant to the ALJ's decision because they were from multiple years after her date last insured and multiple years prior to her application date." (Doc. 13 at 19). This is not true. Dr. Gordon's treatment notes begin in 2009, which is within the relevant period. (Tr. 788).

Additionally, an ALJ must give a treating physician's medical opinion substantial or considerable weight, unless the ALJ clearly articulates good cause for discrediting that opinion. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2001). Here, the ALJ failed to address any of Dr. Gordon's opinions or records. Despite the Commissioner's arguments to the contrary (doc. 13 at 19), the record contains treatment notes from Dr. Gordon during the relevant time period in 2007 through 2009. (Tr. 788-831). On remand, the ALJ should reevaluate Joiner's RFC based on her allegations of physical limitations and Dr. Gordon's records.

### VI. Conclusion

Based on the foregoing, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Joiner's claims for a period of disability, disability insurance benefits, and supplemental security income

is **REVERSED AND REMANDED** for reevaluation for Joiner's RFC with consideration of Dr. Gordon's medical records and opinion.

DONE this 16th day of March, 2020.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE